IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CIVIL ACTION NO: **1** : **15 CV 1036** |
| Plaintiff, | ) JUDGE |
| v. | ) **JUDGE BOYKO** |
| $16,765.00 IN U.S. CURRENCY, | ) |
| 2014 POLARIS RANGER CREW, VIN: 4XAWH9EA2EB181985, | ) COMPLAINT IN FORFEITURE |
| $24,239.28 SEIZED FROM THIRD FEDERAL SAVINGS & LOAN, CHECKING ACCT. #XXXXX2841, | ) **MAG. WHITE** |
| 2013 PORSCHE PANAMERA, VIN: WP0AD2A70DL045122, | ) |
| 2009 INFINITI QX56, VIN: 5N3AA08C69N901781, | ) |
| 2011 FORD F150 TRUCK, VIN: 1FTFW1EF2BFA12761, | ) |
| $4,013.40 SEIZED FROM THIRD FEDERAL SAVINGS & LOAN, SAVINGS ACCT. #XXXXXX8007, | ) |
| 2011 FORD F350 TRUCK, VIN: 1FT8W3BT8BEB91618, | ) |
| 2010 ACURA MDX STATION WAGON, VIN: 2HNYD2H64AH533150, | ) |
| 2014 FORD F150 TRUCK, VIN: 1FTFW1R67EFB15902, | ) |

$6,300.46 SEIZED FROM JP MORGAN
CHASE BANK, BUSINESS CLASSIC
CHECKING ACCT. #XXXXX0957,

$65,386.20 SEIZED FROM JP MORGAN
CHASE BANK, CHECKING ACCT.
#XXXXX8690,

$71,110.29 SEIZED FROM JP MORGAN
CHASE BANK, CHECKING ACCT.
#XXXXX4462,

$27,290.56 SEIZED FROM FIRST MERIT
BANK, CHECKING ACCOUNT
#XXXXXX7175,

$26,989.51 SEIZED FROM FIRST MERIT
BANK, CHECKING ACCT.
#XXXXXX4802,

$79,270.73 SEIZED FROM FIRST MERIT
BANK, CHECKING ACCT.
#XXXXXX4053,

$89,257.31 SEIZED FROM WELLS FARGO
BANK, CHECKING ACCOUNT
#XXXXXX3398,

$2,801.30 SEIZED FROM WELLS FARGO
BANK, SAVINGS ACCOUNT
#XXXXXX3868,

$7,333.28 SEIZED FROM TD
AMERITRADE CLEARING, BROKERAGE
ACCT. #XXX-XX0110,

$7,876.62 SEIZED FROM HUNTINGTON
NATIONAL BANK, BUSINESS CHECKING
ACCT. #XXXXXXX2900,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2

$209,793.14 SEIZED FROM CHARLES
SCHWAB & CO., INC., BROKERAGE
ACCT. #XXXX9544,

$106,017.74 SEIZED FROM BANK OF
AMERICA, CHECKING ACCT.
#XXXXXXXX6692,

$147,698.30 SEIZED FROM AMERICAN
FUNDS, CB&T CUST SIMPLE IRA ACCT.
#XXXX3285,

$5,266.41 SEIZED FROM AMERICAN
FUNDS, CB&T CUST ROTH IRA ACCT.
#XXXX1832,

$5,093.16 SEIZED FROM AMERICAN
FUNDS, CB&T CUST IRA ACCT.
#XXXX6729,

$483,078.93 SEIZED FROM LPL
FINANCIAL, PTC CUSTODIAN ROTH IRA
ACCT. #XXXX-7661,

$6,442.98 SEIZED FROM LPL FINANCIAL,
PTC CUSTODIAN ROTH IRA ACCT.
#XXXX-2403,

$81,253.76 SEIZED FROM JACKSON
NATIONAL LIFE INSURANCE
COMPANY, VARIABLE ANNUITY ACCT.
#XXXXXX8160,

ASSORTED JEWELRY VALUED AT
$61,500.00,

$6,500.20 SEIZED FROM MFS
INVESTMENT MANAGEMENT,
HERITAGE TRUST COTTEE, IRA ACCT.
#XXXX-XXXXXX51424,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

$5,583.30 SEIZED FROM MFS
INVESTMENT MANAGEMENT,
HERITAGE TRUST COTTEE, IRA ACCT.
#XXXX-XXXXXXX1425,

$5,276.85 SEIZED FROM MFS
INVESTMENT MANAGEMENT,
HERITAGE TRUST COTTEE, IRA ACCT.
#0309-08189451426,

$5,924.42 SEIZED FROM MFS
INVESTMENT MANAGEMENT,
HERITAGE TRUST COTTEE, IRA ACCT.
#XXXX-XXXXXXX1427,

ASSORTED SILVER, GOLD, DIAMONDS
AND PEARLS VALUED AT $29,727.66,

$33,827.00 IN U.S. CURRENCY,

$9,838.60 SEIZED FROM FIRST MERIT
BANK, CHECKING ACCT.
#XXXXXX8640,

$2,111.59 SEIZED FROM HUNTINGTON
NATIONAL BANK CHECKING ACCT.
#XXXXXXX1007,

$1,324,690.90 SEIZED FROM   LPL
FINANCIAL, BROKERAGE ACCT.
#XXXX-8594, AND

$27,026.84 SEIZED FROM LPL
FINANCIAL, BROKERAGE ACCT.
#XXXX-9957,

REAL PROPERTY LOCATED AT 10640
BAYSHIRE TRAIL, KIRTLAND, OHIO,
PERMANENT PARCEL #20A031B000170,
TITLED TO BRANDON SELVAGGIO,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NOW COMES plaintiff, the United States of America, by Steven M. Dettelbach, United States Attorney for the Northern District of Ohio, and Phillip J. Tripi, Assistant U.S. Attorney, and files this Complaint in Forfeiture, alleging on information and belief the following:

## JURISDICTION AND INTRODUCTION

1.      This Court has jurisdiction over this in rem proceeding pursuant to 28 U.S.C. §§ 1345 and 1355, 21 U.S.C. § 881, and 18 U.S.C. §§ 981 and 1956.

2.      This Court has venue in this matter pursuant to 28 U.S.C. § 1395.

3.      The Defendant accounts and personal properties were seized by law enforcement officers on August 29, 2014, January 21, 2015, and February 3, 2015, and are now in the possession of the federal government. All of the captioned defendants are hereinafter collectively referred to as the "Defendant properties."   Those Defendant properties which are bank accounts or investment accounts are collectively referred to as "Defendant accounts."   Those Defendant properties which are amounts of U.S. currency, motor vehicles, jewelry, precious metals, loose diamonds, loose pearls, or real property are collectively referred to as "Defendant real and personal properties.")

4.      Subsequent to the seizure, the DEA commenced administrative forfeiture proceedings against the defendant properties. A number of claims to various defendant properties were submitted in the administrative forfeiture proceeding by Dominic A. Schender, Brandon Selvaggio, Iris Karina Baker, Gabriel J. Saluan, and Roberta Eldridge, necessitating the filing of this judicial forfeiture action.

5.      The Defendants are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881 because they constitute proceeds from and/or were used or intended to be used to facilitate drug trafficking activities in violation of 21 U.S.C. §§ 841(a) and 846, and/or pursuant to

18 U.S.C. § 981 because they constitute proceeds or property derived from proceeds traceable to wire fraud in violation of 18 U.S.C. §§ 1343 and 1349, and/or because they were involved in money laundering in violation of 18 U.S.C. §§ 1956 and 1957.

## FORFEITURE COUNT

6.      An ongoing law enforcement investigation has revealed that Dominic A. Schender (hereinafter "Schender") is a significant participant in both a conspiracy to commit drug trafficking in violation of 21 U.S.C. §§ 841 and 846 and a conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349.   Schender and his coconspirators are engaged in money laundering involving the proceeds of both conspiracies.   Those participating with Schender in these criminal activities include, among others, Brandon Selvaggio (hereinafter "Selvaggio"), Iris Karina Baker (hereinafter "Iris Baker"), Gabriel J. Saluan (hereinafter "Saluan"), Gregory Harris (hereinafter "Harris"), John McCoy (hereinafter "McCoy") and Chelsea Baker.

7.      Schender and his co-coconspirators own, manage, or otherwise control a number of businesses.   The criminal investigation has revealed that the coconspirators are involved in a complex set of interrelationships, both personal and business-based, and that the coconspirators utilize those corporations for the purpose of layering financial transactions to make them appear legitimate and to conceal from law enforcement the nature, source, location, ownership, or control of the proceeds.

8.      The law enforcement investigation revealed that Schender and his coconspirators took the illegal proceeds from their wire fraud and drug trafficking activity and deposited them into a number of the Defendant accounts.   Schender and his co-conspirators then laundered those funds in and out of the remaining Defendant accounts.   Criminal proceeds were also used to purchase defendant real and personal properties.

**A.     Search of August 29, 2014**

9.      Federal law enforcement agencies learned that Schender, Harris, and Iris Baker were involved in the distribution of marijuana in Lake County, Ohio, and that Harris deals in multiple-pound sales of marijuana.   A search warrant was obtained for the search of Harris' residence, a property owned and occupied by Schender.

10.      On August 29, 2014, Schender, Harris, Iris Baker, Chelsea Baker, and Iris Baker's mother were present when federal law enforcement officers participated in a search warrant executed at that residential property located on Old Willoughby Drive in Willoughby, Ohio. Harris and Chelsea Baker were located in the basement when the search team entered the residence.

11.      On that date, Schender possessed defendant $16,765.00 in U.S. Currency in his master bedroom.   In the basement, law enforcement officers discovered and seized numerous drug ledgers from a basement closet.

12.      Financial documents were recovered during the search, including checks from Defendant First Merit Checking Account  xxxxxx4802 in the name of Discounted Telecommunication Services; checks from Defendant Wells Fargo Bank, N.A. account #xxxxxx3398 in the name of DAS Funding Group; several uncashed paychecks from Enhanced Telecommunication Services of 7281 Industrial Park Blvd., Mentor, Ohio (an address later associated with Discount Directory, Inc.) made out to Iris Baker, Chelsea Baker, and American Funds; a Defendant Bank of America account # xxxxxxxx6692 statement in the name of Dominic A. Schender showing a balance of $191,429.94; Defendant First Merit bank statements for account xxxxxx4053 in the name of Enhanced Telecommunication Ser. Inc., Iris K. Baker; other financial documents in the name of Enhanced Telecommunication Services and/or Iris Baker; carbon copies

7

of checks written from Enhanced Telecommunication Services to DAS Funding Group on August 14, 2014 for $20,000 and on July 18, 2014 for $75,000; and a statement for Schender's Defendant LPL Financial, Brokerage Account #xxxx-8594 indicating a balance of $1,310,903.07.

13.    Schender spoke to law enforcement officers on August 29, 2014, and made the following statements regarding his employment and involvement in companies:   Schender is self-employed and owned several companies, including DAS Funding Group (hereinafter "DAS Funding"), Discounted Telecommunication Services (hereinafter "DTS"), and DAS Motors LLC (hereinafter "DAS Motors").   He stated the purpose for DAS Motors was to start up a rental car business in Las Vegas, Nevada, but he never ended up doing that.   He told investigators that DTS used his home address as its business address and that the business was closed.   He stated that DAS Funding was Schender's company and he uses it to purchase and flip houses.   Schender denied knowing anything about Enhanced Telecommunication Services.   When asked why Schender had received a check from Enhanced Telecommunication Services in the amount of $20,000, Schender terminated the interview.

14.    Iris Baker was interviewed and she stated that she is the owner of Enhanced Telecommunication Services (hereinafter "ETS") and that Schender and her ex-boyfriend, Selvaggio, used to be partners in ETS.

15.    Harris was interviewed and told law enforcement officers that Schender allows him to live at Schender's Willoughby home rent free.   In response to questioning, Harris was unable to describe what Schender did for a living other than knowing he may have a telecommunications company.

16.    Chelsea Baker was interviewed and told law enforcement officers that she has never worked and that she received her money from her parents.

17.     Law enforcement located records that Schender owned at least three homes and had financial records that he had more than 1,500,000 in savings, and that he had received recent large deposits, including deposits of $20,000 and $75,000 within the prior six weeks from Enhanced Telecommunication Services.

**B.     Businesses involved in the money laundering activity**

18.     Between September 10, 2013 and August 13, 2014, Schender's "closed" DTS company received in excess of $385,000 into its Defendant First Merit Checking Account #xxxxxx4802.

19.     An example of using various corporations to conceal the source, ownership, and nature of large amounts of cash includes that Iris Baker transferred $150,000 to Schender by depositing that amount into the DTS bank account on July 1, 2014, and on that same date, Schender wrote a check in the amount of $130,000 from DTS's checking account to DAS Funding.

20.     DAS Funding, LLC is a business registered in Nevada controlled by Schender and listing Schender as the statutory agent.

21.     Even though Schender told law enforcement officers that DTS was defunct and no longer operational, DTS bank records from Defendant First Merit Business Checking Account # xxxxxx4802 listed Schender as President and deposits into the account during the previous year were in excess of $383,000.

22.     An analysis of the Schender's DTS Account also revealed a large number of deposits/credits from Discount Directory, Inc. (hereinafter DDI),   a company Selvaggio set up and which is managed by John McCoy on Selvaggio's behalf.   The business checking account used by DDI was closed approximately two weeks following the search of August 29, 2014.

9

23.     Further analysis of bank records from DDI indicate that the business account was used for both business and personal expenditures by John McCoy and that the following deposits were made from DDI's business checking account to the following businesses:   Commsource, Inc., deposited into Defendant JP Morgan Chase bank account # xxxxx0957; XL Gaming, deposited into a bank account which was closed approximately two weeks following the August 29, 2014 search; DTS (owned by Schender), deposited into Defendant First Merit Account # xxxxxx4802; WJH 1974, Inc., and Biorage Inc., deposited into First Merit Account xxxxxx7175. McCoy wrote checks for large amounts, usually averaging between $6,000 and $8,000 per business per month, with Commsource Inc. usually receiving a double payment each month.   On these checks to these other corporations, McCoy usually wrote the words "distribution" or "IT Services."

24.     Commsource, Inc. is an active Ohio business registered to Saluan.

25.     XL Gaming is an active Ohio business which lists Selvaggio as a subsequent statutory agent as of July 12, 2012.

26.     Biorage, Inc. is a cancelled Ohio business which listed Selvaggio as its statutory agent.

27.     WJH 1974, Inc. is an active Ohio business.   The registered agent of the company is Wilfred J. Hoover (hereinafter "Hoover").

28.     XL Gaming Inc., Blue Label Printing, and Biorage, Inc. are all companies owned by Selvaggio and all use the address of 9108 Tyler Blvd., Mentor, Ohio.   Iris Baker's ETS is also located in the same business park as Selvaggio's companies, at 9124 Tyler Blvd., Mentor, Ohio. McCoy's DDI is located approximately five miles away, at 7281/7283 Industrial Park, Mentor, Ohio.

10

C.    **Wire Fraud Scheme**

29.    AT&T and other telecommunications companies provide telephone service by landline and cellular telephone service to business and personal customers.   Telecommunication companies are regulated by the Federal Communications Commission (hereinafter "FCC").

30.    Telecommunication companies enter into contractual relationships with other corporations (hereinafter "third parties") which permit those third parties to offer customers additional phone services to be added to their telephone lines, including providing unlimited directory assistance to a customer in exchange for a flat monthly fee.

31.    The third parties have the telecommunication companies, such as AT&T) add charges directly onto customers' monthly telephone service bills.

32.    AT&T monitors the number of complaints made to ensure the integrity of telephone service and the authenticity of charges added by third parties.

33.    AT&T shares in the revenue generated by third parties as a result of additional optional services placed on each phone line.

34.    As early as 2000, Selvaggio devised a scheme by which he would purchase customer lists for business customers of telecommunication companies and thereafter cause to be placed upon customers' telephone bills a monthly charge for unlimited directory assistance service.   Through a series of companies he registered or had registered on his behalf, and on a state-by-state basis, Selvaggio entered into contracts with telecommunication companies to add the service through third parties which he controlled.

35.    Selvaggio was aware that contracts between the telecommunication companies and third parties were terminated if the telecommunication companies received a high volume of

complaints from their customers that optional service charges had not been authorized by the customers.

36.     To avoid detection by the telecommunication company of unauthorized placement of optional services and monthly service charges on their customers' bills, Selvaggio's scheme included both targeting business landline service rather than individual customers cellular or landline service and the listing of a toll free phone number next to the added service charge on each bill.  A majority of the complaining customers would utilize the toll free number to register their complaint about unauthorized added service and, by using the phone number provided on the bill, customers would actually contact the third party rather than the telecommunication company (AT&T) to register their complaint.   Employees of Selvaggio's third parties would then apologize and offer to remove the charge from the monthly statement and credit the customer's account for a portion or all of the past service charges.   By employing this system, the number of complaints received by the telecommunication companies and the likelihood that the fraudulent schemes would be discovered were significantly reduced, thereby avoiding the event which would trigger the termination of the contracts between the telecommunication company provider and Selvaggio's third parties.

37.     The practice of third parties adding charges to a customer's telephone bill for unauthorized optional telephone services is commonly referred to as "cramming," an illegal fraudulent practice.

38.     Selvaggio set up multiple companies, including DTS, DDI and ETS, utilizing a scheme similar to that described above and placed the ownership of those companies into various other names to avoid detection.   Selvaggio would also take his share of the revenues or profits of

each company by having those payments made out to one of his other companies in addition to his own name.

39.     In August of 2014, McCoy managed Discount Directory (DDI); Saluan managed Commsource, Inc.; Schender managed Discount Telecommunication Services (DTS), Iris Baker managed Enhanced Telecommunication Services (ETS); and Selvaggio managed XL Gaming, Biorage, Inc., and Blue Label Printing.

40.     McCoy is related by marriage to Selvaggio.

41.     In 2000, Selvaggio employed McCoy as manager of MBPC, a third party company which provided unlimited directory assistance to AT&T customers.

42.     MBPC's customer base was located in Michigan.

43.     The business location of MBPC was in Chesterland, Ohio.

44.     MBPC's telephone line would be answered by an employee.    Approximately 99% of all calls received by MBPC were calls demanding that the service be cancelled.

45.     Selvaggio instructed McCoy to close MBPC in 2003 or 2004 after AT&T asked MBPC to provide a customer list.

**D.     Discount Directory, Inc. (DDI)**

46.     McCoy was again employed by Selvaggio to manage Discount Directory Inc. (hereinafter "DDI") and directed McCoy to hire Wilfred Hoover as an employee of DDI.

47.     Selvaggio, Schender, and Salaun received approximately one half of the profits generated by DDI.    McCoy received the other half of the profits.

48.     Schender made the initial investment into DDI and paid AT&T for the Ohio contract.

13

49.     DDI paid Selvaggio his portion of the profits by checks payable to XL Gaming or Biorage Inc.

50.     DDI moved in 2009 from Chesterland, Ohio, to a building owned by Selvaggio's father located within an industrial park in Mentor, Ohio.

51.     Selvaggio made all business decisions for DDI.

52.     DDI had approximately 50,000 customers, 13,000 of which were in Texas, the remainder in Ohio.   Each phone line "serviced" by DDI was charged approximately eight to nine dollars monthly for unlimited directory assistance on that telephone line.

53.     Saluan handled all transmissions from DDI to AT&T from Saluan's computer.

54.     DDI would accept any reasonable monetary demand made by complaining customers to avoid complaints to AT&T.   Hoover would receive the complaint call, and enter cancellation and refund information into the DDI computer base.

55.     Hoover was paid both by direct payroll and in separate payments by McCoy to a corporation owned by Hoover, WJH 1974, Inc.

56.     In 2014, Schender demanded that DDI pay Schender an additional $7,000 per month which was paid directly to Schender through a bank account in the name of Discount Telecommunication Services (hereinafter "DTS").

57.     DDI paid Salaun by business check each month payable to Salaun's Commsource Inc, account.

58.     DDI billed approximately $1.2 million in service charges to AT&T customers in 2014.

59.     Selvaggio has threatened in the past to take DDI from McCoy.

60.     Schender intimidated McCoy into making additional payments from DDI to Schender.

61.     McCoy would meet Salaun at the business once a month to download phone numbers from the computers to Salaun's laptop computer.

62.     McCoy decided to close DDI shortly after search warrants were executed on January 21, 2015.

**E.     Enhanced Telecommunication Services (ETS)**

63.     Iris Baker is the listed owner of ETS.   The business address for ETS is 9124 Tyler Blvd., Mentor, Ohio.

64.     Iris Baker represented to law enforcement on January 21, 2015, that ETS provides directory assistance to customers; however, she did not know what number a customer would call for directory assistance, admitted she does not know how the business operates, and could not name one customer of the business.

65.     Employees of ETS were unaware of the telephone number customers should use if they wanted to contact directory assistance.   ETS has not had any new customers in years.

66.     During the execution of a search warrant at ETS, employees could not name one customer of ETS and had no access to a customer database or records.   There was not a single customer record anywhere in the office.   One of the employees eventually produced two complaint/refund forms which law enforcement officers later determined were invalid.

67.     ETS's original address was the home of Iris Baker's brother in Kentucky, before the company moved its Mentor, Ohio location.

68.     Selvaggio, Iris Baker's ex-boyfrend, set up the company in 2002 and runs the entire business and does all the billing of customers through authorized access as a third party for AT&T. Selvaggio's name does not appear anywhere on ETS paperwork.

69.     Selvaggio directed Baker to hire a particular accountant and payroll company through which Selvaggio maintained control of ETS operations.   Iris Baker received her direction from Selvaggio and Selvaggio's accountant.

70.     Iris Baker obtained a $250,000 loan from Huntington Bank in the name of ETS and transferred most of the borrowed funds to DTS, one of Schender's businesses.

71.     The billings by AT&T list the service and an ETS phone number, 1-800-910-1953, with the listing of the charge for unlimited directory assistance service.   By listing ETS's telephone number rather than AT&T's telephone number, ETS is able to field the majority of complaints that are made by customers.   AT&T monitors the number of complaints in determining whether to extend or terminate contracts with third parties.

72.     Employees of ETS were hired for the sole purpose of fielding phone complaints from customers that had not authorized the additional charge to their phone bill and wanted the charges removed from their telephone service bills.   Employees would also receive calls complaining that the directory assistance service is not working.

73.     If a customer called and said they did not ever authorize the service charge add on, ETS would automatically cancel the service and reimburse the customer.   Employees would process the complaint and Iris Baker would sign off on the issuance of a refund and the cancellation of the service.   Dissatisfied customers were either issued checks or had the credit directly placed on their bill by inputting it into AT&T's computerized billing system.

74.     Chelsea Baker, who admitted to law enforcement that she had never worked in any job, is included in ETS's payroll as an employee and receives approximately $3,000 per month.

75.     Selvaggio's payments are made to his company bank accounts rather than directly to him.

76.     In 2014, ETS generated revenues of approximately $58,000 monthly.

77.     Following the execution of the search warrant at ETS, Selvaggio and Iris Baker removed items and equipment from ETS's office.

**F.     Discounted Telecommunication Services (DTS) and other Schender-owned businesses**

78.     On January 21, 2015, Schender told law enforcement officers that he and Selvaggio were partners in DTS but it had closed a year earlier when AT&T, Verizon, and Frontier did not renew their contracts with DTS.

79.     Blue Label Printing, another Selvaggio company, employed one employee as a graphics designer.   Blue Label Printing had not received a print job for the entire second half of 2014.   Surveillance revealed that the employee regularly watched movies and apparently had no actual work activities or tasks.

**G.     Narcotics Cultivation and Trafficking**

80.     Schender, Harris, and Baker are involved in a marijuana grow operation located in Pueblo, Colorado.

81.     Schender owns a 40 acre "ranch" on Kaitlyn Drive, Pueblo, Colorado, which is valued at approximately $400,000.   The property includes a residential dwelling.

82.     On August 29, 2014, Schender told law enforcement that he just purchased vacation property in Denver.   He later admitted it was actually in a ranch in Pueblo, Colorado, but

failed to disclose the existence of a marijuana grow field contained within a fenced in area on the property.

83.    Again, On January 21, 2015, Schender told law enforcement officers that the Pueblo, Colorado property was a vacation property.

84.    Separate from the residential dwelling on Schender's ranch, he caused to be erected a 6 foot privacy fence enclosing a two to five acre portion of that property.

85.    On January 21, 2015, Schender acknowledged he had purchased a fence to surround a portion of his Colorado property, but did not admit to the existence of a marijuana grow field on that property even after being shown photographs of the enclosed field.

86.    Aerial surveillance of Schender's Colorado property by law enforcement in October, 2014 revealed what appears to be a marijuana grow field that is entirely surrounded by the privacy fence.   The surveillance produced photographic evidence of a well-organized grow area containing 195 large planters containing approximately 600 plants, neatly organized in a grid pattern consisting of 13 rows by 15 rows of growing planters.   All but three of the planters contained large plants consistent with marijuana.   Each planter contained between three and five plants for a total of approximately 600 plants.   Over the course of several days, surveillance established that the plants had been harvested.

87.    Schender is not authorized or licensed by the State of Colorado to cultivate marijuana in that state.

88.    Between December 30, 2012, and August 26, 2014, Schender used his Amercian Express Credit Card to purchase supplies consistent with cultivating marijuana on a large scale. Schender spent in excess of $51,000 towards the purchase of supplies and services consistent with persons engaged in the large scale cultivation and distribution of narcotics.

89.     Between October 13, 2013, and October 6, 2014, Schender made purchases on Ebay utilizing a pay pal account to purchase in excess of $16,000 worth of supplies consistent with persons engaged in the large scale cultivation and distribution of narcotics.

90.     Schender also owns a residential property on West Agate, Las Vegas, Nevada where he was present when a search warrant was executed at that property on January 21, 2015.

91.     On that date, Schender possessed defendant $33,827.00 in U.S. Currency at his Las Vegas residence.

92.     Schender stated to law enforcement officers that he bought hydroponic grow equipment because he thought marijuana would be legal to grow in Nevada and he wanted to have it.  In response to questioning, Schender was unable to identify where he was storing that hydroponic grow equipment.

93.     Schender was asked if he knows of anyone using his grow equipment to grow marijuana and he stated he does not know anyone who is growing marijuana.   Schender was asked again where the grow equipment might be located and he shrugged his shoulders and stated he cannot remember.

94.     From early 2013, through January, 2015, Gregory L. Harris and Chelsea Baker have lived together at various addresses.

95.     In 2013, Chelsea Baker provided a landlord with paperwork indicating she was employed at Enhanced Communications, 7281 Industrial Park Boulevard, Mentor, Ohio.

96.     Law enforcement learned that in 2013, Harris sold marijuana in multiple pound amounts in Lake County, Ohio.

97.     GH Oil, LLC is an active Ohio business as of August 14, 2013, registered to Gregory Harris which lists its address as 1540 Lake Road East, Ashtabula, Ohio.

98.    During a January 21, 2015, interview, Schender told federal law enforcement agents that he had invested $200,000 in GH Oil during the past two years and it is not yet up and running.

99.    Schender owns a home on Old Willoughby Drive in Willoughby, Ohio, which he purchased for $356, 350.   In August of 2014, law enforcement officers learned that Harris was residing at that home.

100.    Harris has a criminal record related to drugs, including a 2006, arrest by the Willoughby Police Department which resulted in a conviction for Possession of Marijuana, a 2008 arrest which resulted in convictions for Possessing Drug Paraphernalia and Drug Abuse; and a 2012 arrest for drug trafficking which resulted in a conviction for Attempted drug trafficking.

**H.    DAS Motors LLC (DAS Motors)**

101.    Schender owns DAS Motor LLC, a company registered in Montana.

102.    Schender launders proceeds of his participation in the drug trafficking and wire fraud conspiracies by purchasing luxury automobiles through his DAS Motors LLC account.   On January 21, 2015, Schender told law enforcement officers that DAS Motors LLC was incorporated to become an automobile rental company in Las Vegas, Nevada, but he never ended up doing that.

103.    On August 28, 2013, Schender purchased Defendant a 2011 Porsche Panamera for $163,808 and titled the vehicle to DAS Motors LLC, listing himself as both president of DAS Motors LLC and DTS in vehicle purchase paperwork and claiming a yearly salary of $35,000.

104.    On November 8, 2013, Schender purchased a 2013 BMW M5 for $86,159.70 and titled the vehicle to DAS Motors LLC, listing himself as president of DTS in vehicle purchase paperwork and claiming a yearly salary of $35,000.

20

105.    Approximately 42 motor vehicles, many of which are high end sports cars and expensive motorhomes, are registered to Schender's DAS Motors.

## CONCLUSION

106.    Each of the Defendant accounts is in the name of a participating co-conspirator and/or a business controlled by that co-conspirator.   Additionally, proceeds from either and/or both of the conspiracies have been used to complete financial transactions in each of the Defendant accounts.

107.    Defendant real and personal properties constitute proceeds of one or both conspiracies, and/or were purchased in whole or in part with those proceeds by one of the participating co-conspirators personally or through one of the corporations controlled by the co-conspirators.

108.    By reason of the foregoing, the defendant properties are subject to forfeiture to the United States pursuant to the statutory authority set forth in paragraph 5 hereof.

WHEREFORE, plaintiff prays that this Court enter judgment condemning the defendant properties and forfeiting them to the United States of America for disposition according to law, and for such other relief as this Court may deem just and proper.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:    _____

Phillip J. Tripi
Assistant U.S. Attorney
Reg. No. 0017767
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
Phone: (216) 622-3769; Fax: (216)522-7499

## VERIFICATION

STATE OF OHIO         )
                             ) SS.
COUNTY OF CUYAHOGA )

    I, Phillip J. Tripi, being first duly sworn, depose and say that I am an Assistant United

States Attorney for the Northern District of Ohio, and one of the attorneys for the Plaintiff in this

action. Under penalty of perjury I depose and say the foregoing Complaint in Forfeiture is based

upon information officially provided to me and is true as I verily believe.

Phillip J. Tripi
Assistant U.S. Attorney

Sworn to and subscribed in my presence this _22nd_ day of May, 2015.

Notary Public

**DANIEL R. RANKE, Attorney At Law**
**Notary Public - State of Ohio**
**My commission has no expiration date.**
**Section 147.03 O. R. C.**

22