IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 1:15 CV 1036 |
| | ) | |
| PLAINTIFF, | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | |
| v. | ) | <u>SCHENDER CLAIMANTS</u> |
| | ) | <u>MOTION TO DISMISS</u> |
| $16,765.00 IN U.S. CURRENCY, ET AL. | ) | <u>THE COMPLAINT PURSUANT TO</u> |
| | ) | <u>FED. R. CIV. PRO. 12 (B)(6)</u> |
| DEFENDANT. | ) | |
| | ) | |
| | ) | |

Now come Claimants, *Dominic Schender, Discounted Telecommunication Services Inc., ("DTS"), DAS Funding Group, Inc. and DAS Motor, LLC*, (hereinafter referred to as "Schender Claimants") and hereby move this Honorable Court for an Order granting a dismissal of the Complaint for Forfeiture and for an Order granting the return of the Defendant property to its respective owners.

### FACTUAL BACKGROUND

According to the Complaint in Forfeiture that was filed on May 22, 2015, the Defendant financial accounts, US currency, jewelry and trucks were seized by officers on August 29, 2014, January 21, 2015 and February 3, 2015.¶3. The Schender Claimants are the owners of the following Defendant Assets:

$16,765.00 in US Currency – Claimant Dominic Schender
2011 Ford F 150 Truck VIN: 1FTFW1EF2BFA12761- Claimant Dominic Schender
2011 Ford F 350 Truck VIN: 1FT8W3BT8BEB916918- Claimant DAS Motor, LLC
$26,989.51 First Merit Checking Acct. - Claimant DTS
$89,257.31Wells Fargo Checking Acct. – Claimant DAS Funding Group, Inc.

    $2,801.30 Wells Fargo Bank, Savings Acct.- Claimant DAS Funding Group, Inc.
    $7,333.28 TD Ameritrade Clearing, Brokerage Acct.- Claimant Dominic Schender
    $106,017.74 Bank of America Checking Acct. – Claimant Dominic Schender
    $483,018.41 LPL Financial, PTC Custodian Roth IRA Acct. – Claimant Dominic Schender
    $6,442.98 LPL Financial, PTC Custodian Roth IRA Acct. – Claimant Dominic Schender
    $81,253.76 Jackson National Life Insurance Company, Variable Annuity Acct.- Claimant Dominic Schender
    Assorted Jewelry Valued At $61,500.00- Claimants Roberta Eldridge and Dominic Schender
    $6,500.20 MFS Investment Management, Heritage Trust COTTEE, IRA Acct.- Claimant DTS
    $5,583.30 MFS Investment Management, Heritage Trust COTTEE, IRA Acct.- Claimant DTS
    $5,276.85 MFS Investment Management, Heritage Trust COTTEE, IRA Acct.- Claimant DTS
    $5,924.42 MFS Investment Management, Heritage Trust COTTEE, IRA Acct.- Claimant DTS
    Assorted Silver, Gold, Diamonds and Pearls Valued at $29,727.66- Claimants Roberta Eldridge and Dominic Schender
    $33,827.00 in U.S. Currency- Claimants Roberta Eldridge and Dominic Schender
    $1,324,640.90 LPL Financial Brokerage Acct.- Claimant Dominic Schender
    $27,026.84 LPL Financial Brokerage Acct. – Claimant Dominic Schender

  The DEA Notice of Seizures directed to the Schender Claimants initiated the forfeiture proceedings. The Schender Claimants timely served a claim for the seized assets which prompted this civil in rem complaint.

## **LAW AND ARGUMENT**

**The government has failed to plead with sufficient particularity to permit a responsive pleading by claimant as required by Supplemental Rule E(2)(a) and the Complaint must be dismissed.**

  The standard for properly pleading an in rem complaint is clear. The government must specify sufficient particularity in the complaint so as to permit a responsive pleading without

requiring the claimant to resort to first filing a motion for more definite statement. Supplemental Admiralty and Maritime Claims Rule E(2)(a). Moreover, reaffirming the need for particularity in an in rem complaint is Supplemental Rule G(2)(f) which requires the government to plead "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof." Since the 2000 enactment of the Civil Asset Forfeiture Reform Act (CAFRA), the government's burden of proof in a forfeiture action has been preponderance of the evidence, heightened from the prior probable cause standard. This legislative modification came in response to widespread perceptions as to the unfairness of taking an individual's property with only a probable cause threshold. See, eg., United States v. Real Property in Otsego County, 241 F.3d 796 (6th Cir. 2001). Because forfeiture of one's private property to the government is "traditionally disfavored," the higher standard for pleading as set forth in the Supplemental Rule controls over the notice pleading otherwise permitted under the Civil Rules.

United States v. $8,221,877 in U.S. Currency, 330 F.3d 141 (3rd Cir. 2003) is a sterling example of the analysis which should be utilized in determining the sufficiency of the pleadings in the instant matter. In $8,221,877, the Third Circuit reversed the District Court's dismissal of the claimant's motion to dismiss. The trial court determined that the claimant must first file an answer and responses to interrogatories before any motion practice was permissible. In reversing, the appellate panel found controlling the protections afforded under the Supplemental Rule standard of pleading in a forfeiture action. Specifically, in analyzing the particularity requirement for pleading an in rem complaint, the Third Circuit noted the particularity requirement arises out of the drastic nature of forfeiture actions, which allow for the seizure of property while the claim on the merits is litigated. Rule (E)(2) is thus an important safeguard against the government's seizing and holding property on the basis of mere conclusory allegations that the property is

3

forfeitable. (Citations omitted.) * * * The very purpose of Rule (E)(2) is to protect claimants from having their property held and from being exposed to invasive discovery on the basis of vague, conclusory complaints. Id.

Objective scrutiny of the instant complaint will reveal that there has been pled absolutely no particular allegations that the property that is owned by the Schender Claimants are proceeds from violating 21 USC §841(a) , 18 U.S.C. §1343 and §1349 and 18 U.S.C. §1956 and §1957. As a matter of fact, the only point in the pleading which even references an alleged violation of law in support of the forfeiture action are the conclusions that the seized funds "constitute proceeds from and/or were used or intended to be used to facilitate *drug trafficking* activities…proceeds or property derived from proceeds traceable to *wire fraud*… and they were involved in money laundering…" ¶5. These conclusions in no way afford the claimants the specificity in pleading which is required under the Supplemental Rules. The Due Process Clause as guaranteed by the United States Constitution mandates that the government provide sufficient details about the alleged criminal activities that the Schender Claimants engaged in. Without such detail the claimants are forced to engage in guesswork in order to answer the complaint and assert the proper affirmative defenses. A close examination of the government's complaint must lead to a conclusion that a dismissal is warranted pursuant to Fed. Civ. R. 12 (B)(6).

## THE BARE-BONES COMPLAINT

1. **The allegations of drug trafficking:**
a. **Execution of search warrant on August 29, 2014- Willoughby Ohio (¶¶ 9-17)**

The government contends that the seizure and forfeiture of the Schender Claimants property, which is in excess of $2,000,000.00, is due to a violation of 21 USC §841 but the complaint does not provide any details about how the Schender Claimants violated federal drug trafficking laws. 21 USC §841 states:

4

> "Except as authorized by this subchapter, it shall be unlawful for any person *knowingly or intentionally*—
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; "

According to the Complaint law enforcement agents learned that "Greg Harris deals in multiple pound sales of marijuana" ¶ 9. Consequently, this was seemingly enough information to convince a judge or magistrate to issue a search warrant for a house that Harris resided in Willoughby, Ohio. Claimant Dominic Schender was the owner of the house but lived in Las Vegas, Nevada. ¶ 90. He rented his Willoughby home to Greg Harris, Iris Baker and Chelsea Baker. ¶ 10.

On August 29, 2014 law enforcement agents executed the warrant and found Harris and Chelsea Baker in the basement. The agents contend that "drug ledgers" were found in a basement closet near where Harris and Chelsea Baker were found. Iris Baker and her mother were also present in the house. Although Schender lived in Las Vegas, he was in town visiting his family in Willoughby, Ohio and was at the house during the execution of the warrant. Schender kept Defendant $16, 765.00 US Currency with him in the master bedroom. The agents seized the cash without explanation.

There is not a single allegation contained in paragraphs 9-17 which can feasibly support a factual nexus between the exhaustive list of defendant properties, which are in excess of $2,000,000.00, and any specified violation of 21 USC §841. The Sixth Circuit has held that the government must prove a "substantial connection" between seized money and an illegal drug transaction. This is a mandatory nexus requirement. United States v. $67,220.00 in United States Currency, 957 F.2d 280, 284 (6th Cir. 1992); United States v. $5,000 in United States Currency, 40 F.3d 846 (6th Cir. 1994). In each of these cases, individuals were carrying the sums of money

5

which were the subject of forfeiture. After thorough analysis of the facts in the record, including positive indications of drug residue on the seized money, drug courier profiles, and anonymous tips, the Sixth Circuit determined that the government had failed to establish the requisite connection between the money and illegal drug transaction. Although in each case probable cause was the standard, the 2000 enactment of CAFRA (which heightened the government's pleading threshold to a preponderance of the evidence), the government's cases most certainly would also fail under the current standard.

     Contrasted with the two Sixth Circuit cases, supra, in the instant case there was no transportation of funds. Rather, the money was sitting, patent and obvious, in various financial institutions. Mr. Schender never tried to secrete the money or spirit it away. This money represents his savings which is used for daily bills incurred as a necessary component of supporting a family. There is no proscription against citizens possessing money, just as "[t]here is nothing even remotely criminal in possessing an automobile." One 1958 Plymouth Sedan v. Pennsylvania 380 U.S. 693, 699 (1965).

     Thus, the only possible and lawful way for the government to properly assert a right to seize the Claimants funds is by pleading, with particularity, the fashion in which the funds are connected to any illegal activity. Detailed analysis of the complaint is required at this point, since it is the only record or statement provided to the claimants to explain why they have been deprived of their retirement and investment accounts, US currency, trucks, jewelry and bank accounts.

     Greg Harris' alleged marijuana sales in Willoughby, Ohio does not provide any factual basis that any of the Schender Claimants were targets of the investigation prior to the search, or that Dominic Schender sold drugs or assisted Harris. In addition, marijuana and drug

6

paraphrenlia were not found during the search. Despite the dearth of evidence the federal agents outrageously and wrongfully concluded that Schender's cash has to be from drug activity and it could not have been legally accumulated so it was seized. In other words, it is as if the agents stated "we are the government, we are taking it and we can try to figure it out later".

b. **Pueblo, Colorado aerial surveillance October 2013 (¶¶ 80-93)**

Dominic Schender owns a 40 acre ranch that contains a house in Colorado. (¶ 81) He bought a fence that surrounds approximately 5 acres the property. (¶ 85). In October 2014 law enforcement conducted "aerial surveillance" of this property and claimed that approximately 600 plants were observed. Law enforcement agents allege that several days later the plants had been harvested. (¶ 86). Agents reviewed Schender's American Express and a Pay Pal accounts and determined that he spent approximately $66,000.00 over an approximate 2 year period on "supplies consistent with persons engaged in cultivation and distribution of narcotics." (¶¶ 88 and 89). A search warrant was never obtained or executed at this property.

However, on January 21, 2015, three months after the aerial surveillance of the Colorado property, law enforcement executed a search warrant at Schender's Las Vegas, Nevada residence. Agents seized Defendant Jewelry that belonged to Dominic Schender, Defendant jewelry that belonged to Roberta Eldridge, and Defendant $33,827.00 in U.S. Currency that belonged to Roberta Eldridge. (¶ 91). (a separate motion will be filed for her claim).

This ridiculous Complaint contains 21 paragraphs that are related to alleged drug trafficking activity in violation of federal law. However, there is not a single allegation which can feasibly support a factual nexus between the claimants accounts, cash, jewelry and trucks and any violation of 21 USC §841. A solitary claim that Schender owns the houses in Pueblo, Colorado and Willoughby, Ohio, without more, falls far short of the pleading requirments in

Supplemental Rule G (2)(f). Although there is an allegation that "supplies" were purchased by Schender over a two year period, there is no description of the supplies, or if they were located in Colorado or Willoughby or used in Colorado or Willoughby. It is clear from the Complaint that those "supplies" were not at the Willoughby, Ohio house when the search warrant was executed six weeks earlier or at a later date in Las Vegas, Nevada. The complaint states that Schender owns the properties in Willoughby, Ohio and Pueblo, Colorado but it fails to inform the Claimants of how his ownership could possibly form the predicate for a seizure of funds when there has been pled no specific connection to a violation of Title 21 USC §841. The government wholly fails to reveal, through the complaint, what specific conduct violated the law, and, how the seized assets are connected with such violation. These general allegations of drug trafficking fall woefully short. These paragraphs set forth nothing less than innuendo, supposition, and inference - all without particularized *facts* in support of the forfeiture action. The government must show, by a preponderance of the evidence, that there exists a "substantial connection between the property and the underlying criminal activity." United States v. One 1984 Cadillac, 888 F.2d 1133, 1136 (6th Cir. 1989). This is a required showing, even if the government cannot show a direct connection between the property and illegal activity. United States v. $21,000 in U.S. Postal Orders, 298 Fed. Supp. 2d 597, 601 (E.D. Mich. 2003). Here there has been pled no underlying criminal activity nor a substantial connection thereto implicating either seized account. The bottom line is this - the government has failed to plead a justiciable case against the defendant properties in accord with the Supplemental Rules. As such, the complaint must be dismissed under Fed.Civ.Pro. R. 12(b)(6) and the seized property returned to Claimants forthwith. Innuendo and speculation are not enough to sustain the government's pleading.

8

2. **The allegations of Wire Fraud (para 29-78)**

Paragraphs 29-78 pertain to other people and entities and describe wrongdoing by others with sufficient particularity. However, it is evident that there are no specific allegations that the Schender Claimants violated the wire fraud statute.

18 USC 1343 states:

"Whoever, having devised or intending to *devise any scheme or artifice to defraud*, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, *transmits or causes to be transmitted* by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds *for the purpose of executing such scheme or artifice…*"

The complaint suggests that only *two* Schender Claimants, Dominic Schender and DTS have any remote connection to the specific wire fraud allegations. The complaint states that Schender managed Claimant Discounted Telecommunications Services, Inc. ("DTS") ¶39. Beyond this fact, there are no allegations of wire fraud that specifically mention Schender or DTS. Also, Schender's alleged "demand" that Salvaggio's company, DDI, pay DTS an additional $7,000 per month does not describe any criminal activity. There are no allegations that Schender or DTS devised any scheme or transmitted a wire for the purpose of executing a scheme. (¶56). These are the only two allegations in the 50 paragraphs that mention Claimants Schender and DTS.

However, it is clear that the government alleges that other persons or businesses may have participated in wire fraud. Schender and DTS are not accused of devising a wire fraud scheme or participating in a scheme or that that they were involved in a transmission by wire. The government does not allege that these Claimants devised a scheme to purchase customer lists or that they caused unapproved monthly charges on customers bills. Finally, the complaint does not allege that these claimants had any contracts with telecommunication companies.

DAS Funding, Inc. and DAS Motor LLC.- businesses that buy and sell houses and cars

Paragraphs 101-105 assert that DAS Motor LLC bought two vehicles for its business purpose which was to rent the cars or eventually resell them.  Schender also owns DAS Funding, Inc. and the business purpose was to buy and sell houses. (¶13). These paragraphs simply recite historical events without alleging any illegality or connection to the Defendant seized funds and assets. Other than a bald unfounded assertion that these businesses are used to launder money from drug trafficking and wire fraud, there no facts were provided in the Complaint to support this absurd theory. The totality of the assertions contained in this portion of the complaint cannot pass scrutiny under the pleading requirement of the Supplemental Rules. There are no particularized allegations of a violation of 18 USC §1343 nor are there pled substantial connections between the (unpled/inferred) illegal conduct and the defendant properties. The failure to allege specific facts sufficient to support an inference that the property is subject to forfeiture must result in a dismissal. See. United States v. $39,000 in Canadian Currency, 802 F.2d 1210, 1222 (10th. Cir. 1986). The vagueness of the complaint must prove fatal to its continued viability pursuant to the Supplemental Rules and cases cited herein. Claimants DAS Funding Group and DAS Motor, LLC respectfully request an Order dismissing the complaint for failure to state a claim against Defendant $89,257.31Wells Fargo Checking Acct. and Defendant $2,801.30 Wells Fargo Bank, Savings Acct. and that the money in the accounts be returned to Claimant DAS Funding Group, Inc. Further, Claimant DAS Motor, LLC seeks and order to return Defendant 2011 Ford F 350 Truck VIN:1FT8W3BT8BEB916918.

10

## **CONCLUSION**

The Complaint contains an unbelievable litany of unverified, unsworn recitations, lay opinion, and inflammatory, factually-unsupported innuendo. Regardless of the sensationalistic nature of the allegations, they do not by their mere existence somehow magically rise to the level necessary for a valid in rem complaint - one which is pled via factual, provable statements. Simply pleading that the defendant property somehow, somewhere, at some point in time, was involved in an unspecified violation of federal law does nothing to inform the Claimants of the issues for framing a response. Rather, it seems to set forth an insurmountable barrier to crafting an answer. To require Claimants to answer the instant complaint without the benefit of even knowing the bare-bones allegations against the defendant properties is contrary to the particularized pleading requirements of the Supplemental Rules. Moreover, it is impossible to envision how a forfeiture based upon such thin allegations could comport with Due Process Guarantees of notice and an opportunity to be heard. Notwithstanding the clear and unambiguous pleading requirements of Supplemental Rule(E)(2)(a), there exists absolutely no allegation which establishes a factual nexus between the defendant properties and any violation 21 USC §841 and 18 USC §1343. Simply citing to an enabling section of statute [21 U.S.C. §881(a)(6)](#) as a basis for forfeiture of private property is far removed from the specificity required under Supplemental Rule E(2)(a) and the many cases decided thereunder.

Claimants assert that, even given the minimal offering by the government in this matter, it is clear that the seizure and forfeiture action has been initiated without probable cause. Claimants respectfully assert that the pleading deficiencies under Supplemental Rule E(2)(a), standing

alone, demand the dismissal of the complaint. Moreover, Claimants pray for an Order which returns the contents of the accounts, cash, jewelry and the two trucks.

>Respectfully submitted,
>
>/s/ Craig T. Weintraub
>CRAIG T. WEINTRAUB, ESQ. (#0040095)
>55 Public Square
>Suite 1600
>Cleveland, Ohio  44113
>(216) 896-9090
>(216) 456-2310 facsimile
>cweintraub@hotmail.com
>
>*Attorney for Claimants*

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically and notice will be sent to all parties electronically by operation of the court's electronic filing system.

>/s/Craig T. Weintraub
>CRAIG T. WEINTRAUB