EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 1:15CV1036 |
| ) | |
| Funds totaling $27,290.56, First Merit Bank, ) | JUDGE CHRISTOPHER A. BOYKO |
| Checking Account #5050037175; ) | |
| ) | |
| a 2013 Porsche Panamera, VIN ) | |
| WP0AD2A7045122; ) | |
| ) | |
| a 2014 Polaris Ranger Crew, VIN ) | |
| 4XAWH9EA2EB181985; and ) | |
| ) | |
| a 2014 Ford F150 Truck, VIN ) | |
| 1FTFW1R67EFB15902 ) | |
| ) | |
| Defendants. ) | |

**MOTION TO UNSEAL AFFIDAVITS IN SUPPORT OF SEARCH AND
SEIZURE WARRANTS AND BRIEF IN SUPPORT**

COMES NOW Brandon Selvaggio ("Mr. Selvaggio") and respectfully moves this Court to unseal affidavits in support of search and seizure warrants authorizing the seizure of Mr. Selvaggio's property on January 12, 2015.  Alternatively, Mr. Selvaggio requests that the Court unseal a redacted version of the affidavits.  In support thereof, Mr. Selvaggio states as follows:

**I.
INTRODUCTION**

On January 21, 2015, agents of the Drug Enforcement Agency ("DEA") executed search warrants at a series of locations, including Mr. Selvaggio's residence located at 10640 Bayshire

Trail, Kirtland, Ohio (4:15-mj-06031). During the search of his home, DEA seized, among other things, 3 vehicles. On the same day, the Government also executed a seizure warrant for an account owned by Mr. Selvaggio at First Merit Bank (4:15-mj-06009). Later, a notice of lis pendens was filed as to Mr. Selvaggio's residence.

Nearly a year and a half later, the affidavits for the search and seizure warrants remain under seal. Mr. Selvaggio has a common law right to know the basis on which the Government seized his assets and personal property. There is no compelling reason to continue to withhold from Mr. Selvaggio the facts relating to the Government's justification for seizing his personal property valued at approximately $159,614.56. Accordingly, Mr. Selvaggio moves this Court to unseal the affidavits to allow Mr. Selvaggio to learn the basis for the Government's seizure. In the alternative and consistent with case law governing similar motions, Mr. Selvaggio requests that the Court unseal the affidavits in redacted form, allowing the government to obscure only that information that would in fact jeopardize the ongoing investigation.

## II.
## STATEMENT OF FACTS

Mr. Selvaggio is a self-employed businessman and inventor with no criminal history. On January 21, 2015, DEA agents executed search and seizure warrants and seized the following account and personal property[1] belonging to Mr. Selvaggio:

- funds totaling $27,290.56, First Merit Bank, Checking Account #5050037175;
- a 2013 Porsche Panamera, VIN WP0AD2A7045122;
- a 2014 Polaris Ranger Crew, VIN 4XAWH9EA2EB181985; and

---

[1] Other personal property was also seized by law enforcement during their search of Mr. Selvaggio's residence. Notably, the Application for Search Warrant states that the search was related to violations of 18 U.S.C. § 1956(a)(1) (Money Laundering), 21 U.S.C. § 841(a)(1) (Possession with intent to distribute or manufacture marijuana), and 21 U.S.C. § 846 (Conspiracy to possess with the intent to distribute marijuana), however, the purported claims against Mr. Selvaggio in the Government's Complaint are not grounded in drug offenses.

2

- a 2014 Ford F150 Truck, VIN 1FTFW1R67EFB15902.

This was the second of three rounds of searches and seizures carried out by law enforcement in connection with an ongoing criminal investigation.  Compl. 3, *United States v. $16,765.00 in U.S. Currency*, No. 1:15-cv-1036, ECF No. 1.  The first took place on August 29, 2014, and the third occurred on February 3, 2015.  Compl. 3.  In February 2015, Mr. Selvaggio received notice of administrative forfeiture regarding the account and vehicles seized and filed claims to the property.

On May 22, 2015, the government filed a Complaint for Forfeiture *In Rem* (the "Complaint") naming the above assets as defendants, as well as others not belonging to Mr. Selvaggio.  Compl. 3.  In addition, the Government alleged for the first time in its Complaint that Mr. Selvaggio's residence, which was previously searched but not seized, was also subject to forfeiture.  Compl.  On June 30, 2015, pursuant to Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, Mr. Selvaggio filed a timely Verified Claim, asserting his ownership of and possessory interests in his seized property and assets named in the Complaint.  Selvaggio Verified Claim, ECF No. 15.  Mr. Selvaggio filed an Amended Verified Claim on July 14, 2015.  Selvaggio Am. Verified Claim, ECF No. 19.

On July 17, 2015, Mr. Selvaggio moved to dismiss the Complaint on the grounds that the Government failed to assert any evidence of the seized property's involvement in or nexus to the alleged drug trafficking activity, money laundering, or wire fraud.  Selvaggio Mot. to Dismiss 3, ECF No. 20.  Shortly thereafter, the Government moved to stay the case until the conclusion of its criminal investigation.  Mot. to Stay, ECF No. 36.  The Court granted the Government's motion on November 2, 2015, and issued a written order staying the case on November 9, 2015.

3

Order, ECF No. 46. The Order denied as moot pending motions to dismiss and ordered the government to file an ex parte report every 90 days on the status of the criminal investigation and reasons for continuing the stay. Order 2.

Mr. Selvaggio has not been charged with a crime. The forfeiture action remains stayed, the government continues to hold Mr. Selvaggio's property, and the notice of lis pendens filed as to his residence continues to encumber title.

## III.
## ARGUMENT

There is a "strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978). An open courtroom is a "fundamental feature of the American judicial system." *Brown & Williamson*, 710 F.2d at 1177. While a district court has "supervisory power" or "discretion" to deny access to documents, that "does not, however, imply that the [court] operates without standards." *Id.* As the Sixth Circuit has previously explained, "[t]he District Court's discretion is circumscribed by a long-established legal tradition." *Id.*

Courts in this circuit have routinely applied the common law right of access to search and seizure warrant affidavits. *See, e.g., In re Search of Fair Fin.*, No. 5:09 MC 117, 2010 WL 3210975, at *2 (N.D. Ohio Aug. 10, 2010), *aff'd*, 692 F.3d 424 (6th Cir. 2012); *see also In re Search Warrant*, No. M-3-94-80, 1996 WL 1609166, at *2 (S.D. Ohio Aug. 20, 1996). Courts outside of the Sixth Circuit have also held that affidavits in support of seizure or search warrants are judicial records and that access to such records "facilitates public monitoring of the various government agencies and branches." *See, e.g.*, *United States v. All Funds on Deposit at Wells Fargo Bank in S.F. in Account No. 7986104185*, 643 F. Supp. 2d 577, 584 (S.D.N.Y. 2009)

4

[hereinafter *In re Account No. 7986104185*] (citations omitted); *see also In re Search Warrant*, No. 00-138M-01(JMF), 2000 WL 1196327, at *1 (D.D.C. July 24, 2000) ("[T]here is a general recognition among the courts of a right of access to the affidavit filed in support of an application for a search warrant.").

The common law right of access requires a balancing of the competing interests of those who seek access with those who oppose it. *In re Search of Fair Fin.*, 2010 WL 3210975, at *2; *In re Search Warrant*, No. M-3-94-80, 1996 WL 1609166, at *10 (S.D. Ohio Aug. 20, 1996). Only the most compelling reasons can justify non-disclosure of judicial records. *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983). Although the presumption of common law access to judicial records "can be rebutted if countervailing interests **heavily outweigh** the public interests in access," *In re Search of Fair Fin.*, 2010 WL 3210975, at *2 (citing *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004)) (emphasis added), mere conclusory allegations of injury are insufficient to overcome the presumption in favor of public access. *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009); *see also In re Wag-Aero, Inc.*, 796 F. Supp. 394, 395 (E.D. Wis. 1992) (finding that "the heavy cloak of secrecy ha[d] been misapplied" where the government merely represented that disclosure "'could have' an adverse effect on its ongoing investigation" and that it believed the suspect "had committed 'probable wrong doings'"). Because the inquiry requires a balancing of interests, it is highly fact and context specific. *In re Search of Fair Fin.*, 2010 WL 3210975, at *2.

The government's interest in protecting an ongoing investigation has been found to be a compelling interest to keep search warrant affidavits under seal. *In re Search of Fair Fin.,* 2010 WL 3210975, at *3. But, such an interest does not automatically outweigh the target's right to

5

know the basis for the search and seizure of his property. *See In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders,* 562 F. Supp. 2d 876, 894 & n.37 (S.D. Tex. 2008) (noting that pre-indictment access to warrant materials may be appropriate even if there is an ongoing criminal investigation) (citing *In re Search Warrants Issued on Apr. 26, 2004,* 353 F. Supp. 2d 584, 591 (D. Md. 2004)); *see also In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 299-300 (S.D. Ohio 1995) (considering the right to examine search warrant affidavits in light of the Fourth Amendment, the court held that where the investigation was not in preliminary stages and no informant's life would be endangered by disclosure, the affidavits could be unsealed). In *Fair Finance*, the court determined that the affidavits should remain sealed because, if unsealed, they would "reveal a virtual 'road map' of the government's investigation." *In re Search of Fair Fin.*, 2010 WL 3210975, at *3. Specifically, the court found that the affidavits would reveal the "government's investigation, investigative techniques and the information derived therefrom, the identities of sources and potential targets of the investigation . . . ." *Id.*

Those concerns are simply not present in this case where the Government filed a 21-page forfeiture complaint providing extensive details regarding the investigation. Specifically, the Complaint reveals the identities of numerous individuals the Government views as targets of the criminal investigation, as well as the identities of individuals who have already spoken to law enforcement officers regarding the investigation. *See, e.g.,* Compl. 6 & 8. Thus, there is no basis to believe that unsealing the affidavits would compromise the integrity of their testimony, because they are already aware of the investigation and have been questioned by law enforcement. Similarly, there is no significant risk that unsealing the affidavits would alert other potential targets or witnesses of the investigation's existence. Anyone potentially connected to

6

this investigation would almost certainly have learned about it in the nearly year and a half since the last of the search and seizure warrants was executed.

Further, the Complaint presents a detailed account of the Government's allegations as to a wire fraud scheme and the roles purportedly played by Mr. Selvaggio and others in that scheme. Compl. 11-17. As a result, the Government cannot plausibly argue that its theory of the case, nor the facts supporting it, remain shrouded in secrecy.

Courts have held that when the government reveals the results of its investigation or its legal theories, sealing is no longer appropriate. *See, e.g., In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp. 2d at 591-92 (finding that the government failed to demonstrate a compelling interest for sealing affidavits where "it is likely that [the target] either knows or strongly suspects who the informers are"); *In re Search Warrant*, 2000 WL 1196327, at *1 (ordering the government to file a redacted affidavit after finding that the target "now knows some of what was in the affidavit"). The Complaint here revealed many important details of the Government's investigation and presumably much of what is contained in any affidavit authorizing the search and seizure of Mr. Selvaggio's property. It is difficult to conceive of a compelling reason to keep the Court's records secret—18 months after the initial seizures—beyond the sort of mere "conclusory allegations which would require the sealing of search warrants in nearly every criminal investigation." *In re Up N. Plastics, Inc.*, 940 F. Supp. 229, 234 (D. Minn. 1996). Without such a showing, it cannot be said that a governmental investigation "heavily outweighs" the common law right to access. *In re Search of Fair Fin.*, 2010 WL 3210975, at *2.

In stark contrast to the Complaint's detailed discussion of alleged criminal activities, there is virtually no evidence regarding how Mr. Selvaggio's assets are traceable to any criminal

activity and legally subject to forfeiture.  *In fact, the only reference to Mr. Selvaggio's seized property and restrained residence are the listing of these assets in the caption of the case.*[2]  Instead, the Complaint generally states that "Defendant real and personal properties constitute proceeds of one or both conspiracies and/or were purchased in whole or in part with those proceeds . . . ."  Compl. 21.  The clear lack of probable cause in the Complaint underscores Mr. Selvaggio's right to know the basis for the seizures, as well as the public's right to information that facilitates the monitoring of government agencies, especially when it comes to civil asset forfeiture.  *See In re Account No. 7986104185*, 643 F. Supp. 2d at 584.

Many courts that have found that an ongoing investigation constitutes a compelling reason to keep affidavits under seal, including the *Fair Finance* court, did so when the party seeking to access to the sealed materials was a member of the media.  The court in *In re Search Warrants Issued Aug. 29, 1994*, for instance, distinguished between those types of cases—where privacy of the target and the government is paramount—and cases such as Mr. Selvaggio's— where the movant seeks relief to learn the probable cause for the government's intrusion into his privacy.  889 F. Supp. at 299 ("This distinction is clearly shown by the fact that courts, in denying any First Amendment right of public access, have considered that the privacy interest of the person whose home has been searched would be jeopardized if the public had access to the records." (citing *Times Mirror Co. v. United States*, 873 F.2d 1210, 1218 (9th Cir. 1989))). Moreover, the court in *In re Search Warrants Issued on Apr. 26, 2004* stated that "the common law right of access to a search warrant affidavit by a newspaper pales in comparison to the rights of a property owner subject to a search and seizure by government agents."  353 F. Supp. 2d at 587.

---

[2] Particularly troubling given the requirement under Supplemental Rule G(2)(f) that the Government state in its complaint "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."

Here, Mr. Selvaggio reasonably asks that he be provided with the affidavits in support of the search and seizure warrants that resulted in the search of his home and business and the seizure of his property. Such relief will allow him to learn the basis for the governmental intrusion into his business and personal affairs. *See Michigan v. Tyler*, 436 U.S. 499, 508 (1978) ("[A] major function of the warrant is to provide the property owner with sufficient information to reassure him of the entry's legality." (citation omitted)). Importantly, the Government seized personal property from Mr. Selvaggio's residence; in *In re Search Warrants Issued August 29, 1994*, the District Court for the Southern District of Ohio specifically noted the movants' privacy interest in their home in its balancing analysis. *See* 889 F. Supp. at 299 (discussing "the right to privacy of the home from searches conducted without a warrant supported by probable cause").

In addition, Mr. Selvaggio notes that he is seeking this relief nearly a year and a half after the execution of the warrants targeting his property, and nearly two years after the government executed its first search and seizure warrants in this investigation. Compl. 3. The government has enjoyed ample opportunity to investigate its case under seal; the investigation is "no longer in the preliminary stages." *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. at 299-300 (finding continued sealing of affidavits unwarranted six months after search was executed). Other courts have likewise held that an investigation that is no longer in its preliminary stages does not require the continued sealing of warrant affidavits. *See, e.g., In re Search of 8420 Ocean Gateway*, 353 F. Supp. 2d 577, 582 (D. Md. 2004), *aff'd sub nom., In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp. 2d 584 (D. Md. 2004) (finding the investigation to be "well underway, having commenced three months prior to the subject search and almost six months have elapsed since the search.").

If the Court finds that compelling reasons still exist to deny Mr. Selvaggio access to the unredacted affidavits, the limitations imposed by the Court "should not be broader than necessary" and must be "the least restrictive possible means" of denying access. *In re Account No. 7986104185*, 643 F. Supp. 2d at 585 (citations omitted); *see also In re Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) ("If access is denied the Court should consider alternatives, such as partial disclosure of documents or disclosure of redacted versions." (citing *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65-66 (1989))). Courts have routinely held that providing a target with redacted versions of the affidavits supporting search and seizure warrants strikes a reasonable balance between the competing interests of the target and the government. *See, e.g.*, *In re Account No. 7986104185*, 643 F. Supp. 2d at 585-86 (unsealing affidavits in redacted form); *In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp. 2d at 592 (finding that redaction addresses both the interests of the property owner and the government); *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. at 302 (finding that "redaction of the original affidavit is feasible and would meet the government's concerns regarding any ongoing criminal investigation"). Therefore, Mr. Selvaggio alternatively requests that the Court unseal redacted versions of the affidavits in support of the search and seizure warrants.

## IV.
## CONCLUSION

For the foregoing reasons, Mr. Selvaggio respectfully moves this Court to unseal the affidavits filed in support of the search and seizure warrants. Alternatively, Mr. Selvaggio requests that the Court require the government to provide Mr. Selvaggio with the affidavits in redacted form.

Dated: June 28, 2016

Respectfully submitted,

/s/ Edward R. La Rue
EDWARD R. LA RUE
820 W. Superior Avenue, Suite 840
Cleveland, OH 44113

/s/ Laura Colombell Marshall
Laura Colombell Marshall (*pro hac vice*)
**HUNTON & WILLIAMS LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Telephone: (804) 787-8013
Facsimile: (804) 343-4773
Email: lmarshall@hunton.com

***COUNSEL FOR BRANDON K. SELVAGGIO***

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on the 28th day of June, 2016, I caused to be electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt, including but not limited to Mr. Phillip J. Tripi, Assistant U.S. Attorney for the Northern District of Ohio, whose offices are located at 801 W. Superior Avenue, Suite 400, Cleveland, OH 44113.

/s/ Laura Colombell Marshall
Laura Colombell Marshall (*pro hac vice*)
**HUNTON & WILLIAMS LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

*Counsel for Claimant Brandon K. Selvaggio*

11