# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTIRCT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **United States of America,** ) | **CASE NO.  1:15 CV 01036** |
| ) | |
| **Plaintiff,** ) | **JUDGE CHRISTOPHER BOYKO** |
| ) | |
| vs. ) | |
| ) | |
| **$16,765.00 in U.S. Currency,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM IN SUPPORT OF CRAIG T. WEINTRAUB'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

This Court should grant the motion of attorney Craig T. Weintraub and enter a temporary restraining order enjoining Harvey Bruner from dispensing, transferring, or otherwise accessing any of the funds that previously had been seized by the United States from the Defendants in this action and recently have been returned by the United States to Bruner.  As set forth more fully herein, Weintraub was the attorney for Defendants and entered into a fee agreement with them, which entitles Weintraub to a portion of the seized assets that have been returned by the United States.  Weintraub worked on behalf of Defendants for more than four years.  At the eleventh hour, Bruner came in and replaced Weintraub as counsel for Defendants.  Shortly thereafter, the United States agreed to a final settlement with Defendants, which has been largely brokered by Weintraub and was due to the efforts of Weintraub over the course of four years.  Bruner worked approximately 30 hours on this case, compared to the four years that Weintraub worked on behalf of Defendants.  Bruner has taken the position that Weintraub is not entitled to receive any fee for his efforts on behalf of Defendants.  On September 13, 2019, Weintraub filed a motion to

intervene in this action.  Weintraub learned later on September 13, 2019, that the United States already has begun the process of returning the funds to Defendants, and the funds already are likely in Bruner's account.  Weintruab therefore seeks a temporary restraining order to prevent Bruner from dispensing, transferring, or otherwise accessing any of these funds, so that the status quo can be maintained until such time as the Court can resolve the rights of the respective parties to these funds.  Absent a temporary restraining order, it is likely that Bruner and Defendants will transfer and spend these funds, and even if the Court were to later determine that Weintraub has a right to a portion of the funds, the funds will be gone and Weintraub will not be able to obtain any relief.

Moreover, Ohio law requires that Bruner not distribute or otherwise transfer these funds until the dispute is resolved.  Rule 1.15(e) of the Ohio Rules of Professional Responsibility requires that when "a lawyer is in possession of funds . . . in which two or more persons, one of whom may be the lawyer, claims interest, the lawyer shall hold the funds . . . until the dispute is resolved."  The Court should issue an injunction, consistent with Rule 1.15(e), requiring Bruner not to distribute or otherwise transfer the funds until such time as the Court can determine Weintraub's right to a portion of those funds.

## Background Facts

Weintraub is an attorney admitted in the State of Ohio and, at all times mentioned herein, was practicing as The Law Offices of Craig T. Weintraub (collectively "Weintraub").  Weintraub was a law firm providing legal services through its attorney to clients in Ohio with its principle place of business located in the city of Cleveland, County of Cuyahoga, State of Ohio.  (See Affidavit of Craig T. Weintraub, attached hereto as Exhibit A, ¶ 2.)  Defendants Dominic

Schender ("Schender") and Roberta Eldridge ("Eldridge") contracted with Weintraub to defend them in this action and to represent them for all claims arising from a seizure of property. Defendants Schender and Eldridge retained Weintraub in 2015 to represent them for all claims arising from a seizure of property in this litigation. (*Id*. ¶¶ 3-4.) The fee agreements expressly provide that the attorney client contract creates a charging lien if Weintraub was terminated and it expressly assigned Schender and Eldridge's rights to collect Weintraub's contingency fee of 15%. The charging lien pertained to the proceeds of any settlement, judgment, verdict award or property obtained on their behalf. (*Id*. ¶ 4.)

From 2015 through 2019 Weintraub represented Schender and Eldridge in this matter. The first contract was entered on or about 2014 which is when Weintraub commenced a defense to the claims. Weintraub received a retainer from Schender and Eldridge and the parties agreed to an hourly rate. In 2015 Weintraub provided Schender with a billing statement reflecting the hours and services provided. Although Schender was indigent because of the seizure of all of his money Weintraub continued to perform services with the likelihood that the money and property would be returned to Defendants and Weintraub could be paid from the returned funds. (*Id*. ¶ 5.)

On nor about September 27, 2018 the United States Attorney's Office notified Weintraub and the Court that, after years of litigation, the United States would not pursue an indictment against Schender and Eldridge. Consequently, Schender requested Weintraub to terminate the hourly contract and to enter into a contingency contract with him. Schender and Weintraub agreed that Weintraub would receive 15% of any recovery of the seized money. (*Id*. ¶ 6; a copy of the fee agreement is attached to the Weintraub Affidavit as Exhibit 1.)

Weintraub prepared for settlement of the claims in this matter and some of the services included, but were not limited to, communicating with the Assistant United States Attorney and continuing to assert a demand for the return of all property. In preparation of the settlement discussions Weintraub obtained a financial report to assist in the settlement process which reflected the present day value of the monies that were seized. In May 2019 Weintraub effectuated the return of a portion of the monies and computers seized by the government. (Weintraub Aff. ¶ 7.)

On or about April 26, 2019 Weintraub began a capital murder trial as defense counsel in a case captioned as *State of Ohio v. Thomas J. Knuff, Jr.,* Case No. CR-18-625253-A, in the Cuyahoga County Court of Common Pleas. (*Id*. ¶ 8.) On June 2, 2019 Weintraub received an email that attorney Harvey Bruner filed a Notice of Appearance on behalf of Defendants while Weintraub was in trial on the capital murder case and on June 13, 2019 Bruner appeared at a settlement conference. (*Id*. ¶ 9.) This Court had previously scheduled the settlement conference while Weintraub was still counsel of record and negotiating with the government. Bruner essentially appeared in Weintraub's stead at the settlement conference. Subsequent to the settlement conference, Bruner settled all claims and all monies and property is being returned to the Defendants. (*Id*. ¶ 10.)

On July 31, 2019, Weintraub notified Bruner and the United States Attorney's office about the contractual charging lien. Later that day Bruner wrote an email response to Weintraub that he "will not distribute any funds until You and I reach a resolution. Please advise Henry that we are working towards a Resolution of this matter." (*Id*. ¶ 11; correspondence between Weintraub and Bruner is attached to the Weintraub Affidavit as Exhibit 2.)

During the first week in August 2019 Bruner and Weintraub talked several times about the fee that Weintraub was owed  and Bruner acknowledged that a fee was due and owing and promised to agree to disburse fees to Weintraub.  (Weintraub Aff. ¶ 12.)  On  August 7, 2019 Weintraub and Bruner met in person to discuss the fees and it was disclosed by Bruner that he signed Schender and Eldridge to a contract with a lower contingency percentage, 10%, than Weintraub's 15%.  Weintraub and Bruner agreed that Weintraub would receive approximately 72% of the attorney fees and Bruner would receive the remainder for his minimal services.  Bruner indicated that he provided approximately 30 hours of services to Schender and Eldridge.  The agreement between Weintraub and Schender meant that Bruner would receive approximately $3,000 per hour for the 30 hours of service.  (*Id*. ¶ 13.)

On or about August 12, 2019, Weintraub was notified that Bruner retained counsel, who advised that despite an agreement with Schender and despite Bruner's agreement to pay fees, that Weintraub will not receive any fees for services rendered since 2015.  Bruner's position is that Bruner would receive all of the attorney fees.  (*Id*. ¶ 14.)  According to the plain language of the fee agreement, Weintraub holds a valid attorney fee charging lien against the money that is being returned to Schender and Eldridge for 15% of the total amount or the reasonable value of services rendered in the case for over four years of services.  The determination of Weintraub's and Bruner's rights is based on the equitable principle *of quantum meruit.*  (*Id*. ¶ 15.)

On September 13, 2019, Weintraub filed a motion to intervene in this litigation to protect his substantial legal interest in the subject matter of the case and attaching a proposed third-party complaint against Bruner and Schender.  (*Id*. ¶ 16.)  Also on September 13, 2019, Weintraub contacted Henry F. DeBaggis, and assistant U.S. Attorney representing the United

5

States in this action, informing him that the motion to intervene had been filed, and stating: "Since this matter is now pending on the docket I am respectfully requesting that the government cease and refrain from distributing any of the settlement proceeds to Mr. Bruner and Mr. Schender until the court decides the motion and these issues are resolved."  Mr. DeBaggis responded:  "I got an email from the Marshalls last Friday that the funds were being disbursed and they would likely be deposited in Harvey's account in the next few days so there is nothing I can do at this point.  Harvey has the money."  (*Id*. ¶ 17; a copy of the e-mail exchange between Weintraub and DeBaggis is attached to the Weintraub Affidavit as Ex. 3.)

## Argument

In determining whether to issue a temporary restraining order or a preliminary injunction, the Court must consider the following factors:

1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

2. Whether the movant has shown irreparable injury;

3. Whether the issuance of a temporary restraining order or preliminary injunction would cause substantial harm to others;

4. Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Assoc., v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).  No single factor in this test is determinative and the Court must weigh each factor in light of the circumstances of the case.  "A fixed legal standard is not the essence of equity jurisprudence."  *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537-538 (6th Cir. 1978), *cert. denied*, 442 U.S. 925 (1979).  "In general, the likelihood of success that need be shown . . . will vary inversely with the degree of

6

injury the plaintiff will suffer absent an injunction." *Friendship Materials, Inc. v. Michigan Brinck, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982). As the moving party, Weintraub must establish its case by clear and convincing evidence. *Deck v. City of Toledo*, 29 F. Supp. 2d 431, 433 (N.D. Ohio 1998).

1. **Ohio law requires Bruner to hold the funds pending resolution of Weintraub's equitable charging lien.**

Ohio law requires that Bruner not distribute or otherwise transfer the disputed funds until the matter is resolved. Rule 1.15(e) of the Ohio Rules of Professional Responsibility requires that when "a lawyer is in possession of funds . . . in which two or more persons, one of whom may be the lawyer, claims interest, the lawyer shall hold the funds . . . until the dispute is resolved." The Court should issue an injunction, consistent with Rule 1.15(e), requiring Bruner not to distribute or otherwise transfer the funds until such time as the Court can determine Weintraub's right to a portion of those funds

In Disciplinary Counsel v. Gold, 154 Ohio St. 3d 106 (2018), the Ohio Supreme Court upheld sanctions against an attorney who violated Rule 1.15(e) by failing to hold onto disputed funds. Comparing the attorneys conduct to that of another disciplined attorney in Disciplinary Counsel v. Marshall, 142 Ohio St. 3d 1 (2014), the Supreme Court held: "The board found that the facts of Gold's misconduct are very similar to those facts in Marshall. Both Gold and Marshall held tens of thousands of dollars in trust pursuant to court orders pending the judicial resolution of fee or ownership disputes. Each attorney took the funds in violation of the court's orders, failed to comply with court orders to produce required records regarding the funds, and, consequently, was held in contempt of court. There are also common aggravating factors,

7

including a dishonest or selfish motive, multiple offenses, the absence of prior discipline, and full and free disclosure." Id. para. 27. Gold, like Marshall, was given a two-year suspension, which was stayed on conditions. Id. para 29.

### 2. **Weintraub Has a Strong Likelihood of Success of the Merits.**

Weintraub has demonstrated a strong likelihood of success on the merits. Weintraub represented Defendants for more than four years in this litigation. (Weintraub Aff. ¶ 5.) He did so pursuant to a fee agreement that entitles Weintraub to a contingency fee of 15% of the assets returned by the United States to the Defendants. (*Id*. ¶¶ 5-6.) Weintraub was discharged by Defendants at the eleventh-hour and replaced as counsel by Bruner, who only performed approximately 30 hours of work on behalf of Defendants, as compared to the four years' worth of work performed by Weintraub. (*Id*. ¶¶ 7-9.) Bruner claims to be entitled to a contingency fee of 10% of the returned assets. (*Id*. ¶¶ 13-14.) Ohio law is clear that in that circumstance Weintraub is entitled to quantum meruit for the value of his services. *See, e.g., Fillius v. Outdoor Sports Headquarters, Inc.*, Case No. C-3-90-358, 1995 U.S. Dist. LEXIS 22176, at *4 (S.D. Ohio May 18, 1995) ("When, as in the present case, the law firm and its client have a contingent fee agreement, the firm is entitled to recover under quantum meruit for the reasonable value of its services before the discharge." (citation omitted)). Ohio law further is clear that, in light of the 30 hours of work performed by Bruner, he is not entitled to a 10% contingency fee, which would result in his receiving an exorbitant and unreasonable fee. *See, e.g*., Rule 1.5(a), Ohio Rules of Professional Conduct; *State ex rel. Harris v. Rubino*, 156 Ohio St. 3d 296, 297 (2018) ("To determine a reasonable fee, we begin by multiplying a reasonable hourly rate by the number of hours reasonably expended."). Consequently, Weintraub has demonstrated a strong

8

likelihood that he will succeed on the merits and be awarded a significant portion of the

### 3. <u>Weintraub Will be Irreparably Injured Absent Injunctive Relief</u>.

Weintraub also has demonstrated that he will be irreparable injured if the Court does not issue a temporary restraining order because of the very real threat that Defendants and Bruner will transfer and dispose of the funds, leaving Weintraub with no remedy.

Because Weintraub's equitable claim for a fee based upon quantum meruit is equitable in nature, the United States Supreme Court's holding in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), militates in favor if issuing a temporary restraining order. In that case, the movant sought to prevent defendants from disposing of their assets pending adjudication of a contractual claim for money damages. The Supreme Court granted certiorari to determine "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Id*. at 310. While the Court in *Grupo Mexicano* held that an injunction was not appropriate, in this case Weintraub has asserted a lien and an equitable interest in the funds at issue. As noted in the dissenting opinion, "[w]e long ago recognized that district courts properly exercise their equitable jurisdiction where 'the remedy in equity could alone furnish relief, and . . . the ends of justice require the injunction to be issued.' *Watson v. Sutherland*, 72 U.S. 74 . . . (1867). Particularly, district courts enjoy the 'historic federal judicial discretion to preserve the situation [through provisional relief] pending the outcome of a case lodged in district court.'" 527 U.S. at 335 (citation omitted) (Ginsburg, J., dissenting); see also *Myers v. Adm'r, Ohio Bureau of Workers Comp*., 2001 Ohio App. LEXIS 1761, at *3 (Mahoning Cty. Mar. 30, 2001) ("the lower court issued a temporary restraining

order enjoining the Ohio Bureau of Workers' Compensation from disbursing settlement monies without first setting aside $16,000.00 as a claimed contingency fee and expenses.").

*In Mancino v. Lakewood*, 36 Ohio App.3d 219, 223-224, 523 N.E.2d 332 (8th Dist.1987). the Court stated that "[A] 'charging lien' is a lien upon a judgment or other monies awarded to a client, or former client, for work previously performed by the attorney." (see also *Cuyahoga County Bd. of Comm'rs v. Maloof Props.*, 197 Ohio App. 3d 712, 2012-Ohio-470, 968 N.E.2d 602, ¶ 143 (8th Dist.), citing *Petty v. Kroger Food & Pharmacy*, 165 Ohio App. 3d 16, 2005-Ohio-6641, 844 N.E.2d 869 (10th Dist.); *Hill Hardman Oldfield, L.L.C. v. Gilbert*, 190 Ohio App. 3d 743, 944 N.E.2d 264, 2010-Ohio-5733 (9th Dist.); *First Bank v. Roslovic & Partners, Inc.*, 10th Dist. Franklin No. 03AP-332, 2004-Ohio-2717.)

Ohio courts recognize an attorney's equitable right to enforce a "charging lien for the payment of fees earned in the prosecution of litigation to judgment." *Mancino* at paragraph three of the syllabus. In *Mancino*, the Court held: "The right of the attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment obtained by him, and is upheld on the theory that his services and skill created the fund. Although there is no provision in the Code creating or [***8] recognizing the right of an attorney to a lien as security for payment of compensation for his services, it is plain from a long line of decisions by the courts of this state that the right exists, and in proper cases the courts will lend their aid to maintain and enforce it. Id Mancino.

"A special or charging lien may be created by an express agreement on the part of the client that the attorney shall have a lien for his compensation on the amount recovered. While,

before judgment, an attorney has no lien upon or interest in the cause of action, in the absence of statute, yet where the parties have contracted that the attorney shall receive a specified amount of the recovery, such agreement will operate as an equitable lien in favor of the attorney." 6 Ohio Jurisprudence 3d (1978), Attorneys at Law, Sections 178-179, at 721-722; Section 183, at 725. *See, also, Foor v. Huntington Nat'l Bank* (1986), 27 Ohio App. 3d 76, 27 Ohio B. 95, 499 N.E.2d 1297, paragraph two of the syllabus.

An attorney's lien is founded on the equitable principle that an attorney is entitled to be paid his or her fees out of the judgment rendered in the case. *See* Annotation (1983), 23 A.L.R. 4th 336. Contingent fee arrangements in civil cases are a widely accepted practice. An attorney and client may lawfully agree upon compensation to the former contingent upon the amount to be recovered, either by settlement or by judgment, and a court will recognize the validity and enforceability of contracts providing for such arrangements. 6 Ohio Jurisprudence 3d (1978), Attorneys at Law, Section 155, at 690.*Id.* at 224. This right of the attorney to obtain payment from the judgment for work performed on behalf of the client or former client also encompasses the settlement the attorney obtains on the client's behalf. *Maloof*, 197 Ohio App. 3d 712, 2012-Ohio-470, 968 N.E.2d 602, ¶ 15. This right is "based on the theory that the attorney's 'service and skill created the fund.'" *Id.*, quoting *Cohen v. Goldberger*, 109 Ohio St. 22, 141 N.E. 656 (1923), paragraph one of the syllabus. (see <u>*Kisling, Nestico & Redick, L.L.C. v. Progressive Max Ins. Co.*, 2018-Ohio-1207, 110 N.E.3d 681, ¶ 14-19 (8th Dist.)</u>

"For more than 70 years, the courts of Ohio have recognized that an attorney has a right to assert a lien against any judgment he or she obtains on behalf of his or her client. In *Cohen v.*

*Goldberger*, 109 Ohio St. 22, 141 N.E. 656 (1923), the Ohio Supreme Court held, in P 1 of the syllabus: 'The right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on a theory that his services and skill created the fund.'" *Fillius*, 1995 U.S. Dist. LEXIS, at *5. As the Court held in *Beanstalk Innovation, Inc. v. SRG Tech., LLC*, Case No. 1:17-cv-553, 2017 U.S. Dist. LEXIS 140407, at *11-*12 (S.D. Ohio Aug. 31, 2017): "Plaintiff's motion for temporary restraining order states that Plaintiff is requesting immediate injunctive relief due to a concern that the money held in trust for Plaintiff will be unrecoverable without an injunction. As discussed above, such a concern is typically insufficient to justify injunctive relief in a case seeking money damages, but injunctive relief is appropriate when funds specifically held (or to be held) in trust are at risk."

Thus, under the holding of *Grupo Mexicano*, Weintraub is entitled to injunctive relief because he has asserted a claim in equity and a lien. Weintraub will suffer irreparable injury in this case if the status quo is not preserved through a temporary restraining order because there is a strong likelihood that both Defendants and Bruner will dispose of the returned assets, leaving no money to compensate Weintraub for the *quantum meruit* value of the services he provided to Defendants in this action. There is a serious concern that neither Defendants nor Bruner have other funds or assets sufficient to satisfy Weintraub's attorney fee in this case.

**4. Issuing a Temporary Restraining Order Will Not Harm Defendants or Bruner.**

Not only will Bruner not be harmed, Ohio Rule of Professional Responsibility 1.15(e) prevents Bruner from disbursing the funds, it requires Bruner hold all funds in his trust account. Entry on an injunction will simply require Bruner to follow Ohio law and will prevent the

potential imposition of disciplinary sanctions against Bruner. Rule 1.15(e) of the Ohio Rules of Professional Responsibility provides: "When in the course of representation a lawyer in possession of funds or other property in which two or more persons, one of whom may be a lawyer, claims interests, the lawyer shall hold the funds or other property pursuant to division (a) of this rule until the dispute is resolved. The lawyer shall promptly distribute all portions of the funds or other property as to which the interests are not in dispute." In this case, Weintraub, Bruner, and Defendants claim an interest in the funds returned by the United States pursuant to the settlement. Pursuant to Rule 1.15(e), Bruner is legally obligated to "hold the funds . . . until the dispute is resolved."

Conversely, Weintraub will be harmed if a temporary restraining order is not issued and the money is disbursed, potentially never to be retrieved. Moreover, Once the proper amount for fees is held in trust, the named Defendants will necessarily not be harmed. In fact, Defendants and Bruner will be no worse off than they were while the United States held the funds to determine whether they should be returned to Defendants as part of a settlement agreement with the United States. *See, e.g., Beanstalk Innovation*, 2017 U.S. Dist. LEXIS 140407, at *12 ("In contrast, the potential harm to Defendant is minimal; a temporary restraining order is short-term injunctive relief that is only intended to last until the parties can more thoroughly brief the Court as to a motion for preliminary injunction (or resolve the matter themselves). If Defendant is ultimately able to defeat the pending motion for preliminary injunction, it will once against regain control over its assets. Accordingly, this factor weighs in favor of granting a temporary restraining order.").

**5. The Public Interest Will Be Served Through A Temporary Restraining Order.**

Finally, the public interest militates in favor of this Court granting injunctive relief. "Granting an injunction to protect trust assets owed to a person is in the public interest." *Beanstalk Innovation*, 2017 U.S. Dist. LEXIS 140407, at *12. "The public interest is served through rulings that enforce contractual obligations." *Id*. at * 13; *see also Akron Paint & Varnish, Inc. v. Budd*, Case No. 5:16CV2944, 2016 U.S. Dist. LEXIS 172078, at *7 (N.D. Ohio Dec. 13, 2016) ("the Court finds that the temporary restraining order will benefit the public interest of upholding contracts. There is an interest in requiring defendant to uphold her legal obligations under the contract to the extent that those obligations do not offend governing state law.").

## Conclusion

For the foregoing reasons, Weintraub's motion for injunctive relief should be granted.

September 15, 2019

Respectfully submitted,

 /s/ Michael B. Pasternak
MICHAEL B. PASTERNAK
(Ohio Bar No. 00059816)
Park Center II, Suite 411
3681 South Green Road
Beachwood, Ohio. 44122
(216) 360-8500: Telephone
(216) 360-8501: Fax
*Mpasternak1@msn.com*

JEFFREY SAKS (Ohio Bar No. 0071571)
*jsaks@sakslawoffice.com*
The Saks Law Office, LLC
30799 Pinetree Road #269
Pepper Pike, Ohio 44124
(216) 255-9696

*Attorneys for Third-Party Plaintiff Craig T. Weintraub*

**Local Rule 7.1(f) Certification and Certificate of Service**

Pursuant to Local Rule 7.1(f), I hereby certify that this Memorandum in Support of Craig T. Weintraub's Motion for Temporary Restraining Order and Preliminary Injunction adheres to the page limitations.

I also hereby certify that on September 15, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

    /s/ Michael B. Pasternak
Michael B. Pasternak

*Counsel for Third-Party Plaintiff Craig T. Weintraub*